## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MIGUEL ANGEL MALDONADO
de LEON,

      Petitioner,

      v.

NIKITA BAKER,
*Acting Director of the U.S. Immigration and*
*Customs Enforcement Baltimore Field Office*,
MATTHEW ELLISTON,
*Deputy Assistant Director for*
*Field Operations, Eastern Division,*
*Enforcement and Removal Operations,*
*U.S. Immigration and Customs Enforcement*,
KRISTI NOEM,
*Secretary of Homeland Security*, and
PAMELA BONDI,
*Attorney General of the United States*,
*in their official capacities*,

      Respondents.

Civil Action No. 25-3084-TDC

## MEMORANDUM OPINION

Petitioner Miguel Maldonado de Leon ("Maldonado"), who is currently in immigration

detention, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against

Respondents Nikita Baker, the Acting Director of the United States Immigration and Customs

Enforcement ("ICE") Baltimore Field Office; Matthew Elliston, the ICE Deputy Assistant Director

for Field Operations, Eastern Division, Enforcement and Removal Operations; Secretary of

Homeland Security Kristi Noem ("the Secretary"); and Attorney General Pamela Bondi. In the

Petition, Maldonado seeks immediate release or, alternatively, a bond hearing on the grounds that

his detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution and the right to be free from cruel and unusual punishment under the Eighth Amendment. Maldonado also seeks attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. With its Answer to the Petition, Respondents have filed a Motion to Dismiss. Since the filing of the Petition, Maldonado has also filed a Motion to Compel Respondents to Return the Petitioner to this District ("Motion to Compel"), which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be GRANTED, the Motion to Dismiss will be DENIED, and the Motion to Compel will be DISMISSED AS MOOT.

## BACKGROUND

Maldonado is a citizen and national of Guatemala who entered the United States without inspection on an unknown date over ten years ago. Since that time, Maldonado has worked as a maintenance technician and paid taxes using an Individual Taxpayer Identification Number. He has no criminal convictions.

On September 15, 2025, Maldonado was arrested by ICE agents at a gas station in Hyattsville, Maryland. After Maldonado provided his Maryland driver's license, the ICE agents took him into custody and detained him at the ICE Field Office in Baltimore, Maryland ("the ICE Baltimore Field Office"). That same day, ICE served Maldonado with a Warrant for Arrest ("Warrant") and a Notice to Appear in removal proceedings ("NTA").

The Warrant directed "[a]ny immigration officer" to "arrest and take into custody" Maldonado "for removal proceedings under the Immigration and Nationality Act." Warrant at 1, Ans. Ex. 2, ECF No. 27-2. The NTA stated that Maldonado was being placed in removal

2

proceedings under section 240 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229a.

In addition, the NTA stated that:

> On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
>
> * * *
>
> [Section] 212(a)(6)(A)(i) of the Immigration and Nationality Act, [8 U.S.C. § 1182(a)(6)(A)(i)], as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.
>
> [Section] 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), [8 U.S.C. § 1182(a)(7)(A)(i)(I)], as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

NTA at 1, 4, Ans. Ex. 1, ECF No. 27-1.

Later on September 15, 2025, the NTA and an ICE Form I-830E "Notice to EOIR: Alien Address" ("Form I-830E") were transmitted to the Immigration Court. The Form I-830E stated that Maldonado was detained that day at the ICE Baltimore Field Office but was to be transferred to the Florence Staging Facility in Florence, Arizona.

On September 17, 2025, while Maldonado was still detained at the ICE Baltimore Field Office, he filed the present Petition for a Writ of Habeas Corpus with this Court. ECF No. 1. He has since filed a Supplemental Petition, ECF No. 20, and an Amended Petition, ECF No. 31. On September 18, 2025, Maldonado filed a Motion for a Temporary Restraining Order ("TRO") seeking a court order directing Respondents to release him in Maryland with location monitoring and prohibiting them from moving him outside of this Court's jurisdiction, or, alternatively, directing Respondents to transfer him to a detention facility in Virginia for the pendency of the

habeas proceedings.  On September 19, 2025, Maldonado was moved to a staging facility in Alexandria, Louisiana.  By September 22, 2025, he was moved to the Florence Staging Facility in Florence, Arizona for a hearing before the Florence Immigration Court.  On September 23, 2025, the hearing was canceled, and Maldonado was transferred to the Eloy Detention Center in Eloy, Arizona.  On September 24, 2025, Maldonado's removal proceeding was transferred to the Eloy Immigration Court, and a hearing was scheduled for October 1, 2025.  On September 25, 2025, the Court denied Maldonado's TRO but required Respondents to provide the Court with ongoing updates any time Maldonado is transferred to a new detention facility, his removal proceedings are transferred to a different Immigration Court, or a new hearing is scheduled or completed, or a ruling is issued, in his removal proceedings.

On September 29, 2025, Maldonado filed the Motion to Compel, in which he seeks a court order pursuant to the All Writs Act, 28 U.S.C. § 1651, compelling Respondents to transfer Maldonado back to the District of Maryland, immediately release him with or without conditions, and prohibiting Respondents from moving him outside the District of Maryland, or, alternatively, directing Respondents to transfer him to a detention facility in Virginia for the pendency of his habeas proceedings.

## DISCUSSION

### I.    Petition for a Writ of Habeas Corpus

In his Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Maldonado seeks release from ICE detention, or alternatively, a proceeding before an immigration judge for a review of ICE's custody determination, also known as an initial bond redetermination, or a bond hearing. As relevant here, § 2241 provides that a district court may grant a writ of habeas corpus if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United

4

States." 28 U.S.C. § 2241(c)(3). Maldonado argues that he should be released because his detention violates his due process rights under the Fifth Amendment to the Constitution and constitutes cruel and unusual punishment under the Eighth Amendment to the Constitution. Specifically, Maldonado argues that Respondents' incorrect interpretation of the INA has caused him to be subjected to mandatory detention pursuant to 8 U.S.C. § 1225(b). Respondents argue that this Court lacks jurisdiction to review Maldonado's detention based on 8 U.S.C. § 1252(b)(9), Maldonado's Petition is premature because he has failed to exhaust administrative remedies, and Maldonado is correctly subject to mandatory detention under § 1225(b) and is thus not subjected to any constitutional violations.

### A.    8 U.S.C. § 1252(b)(9)

In their Answer, as a threshold issue, Respondents argue that this Court lacks jurisdiction to review Maldonado's detention based on 8 U.S.C. § 1252(b)(9), entitled "Consolidation of questions for judicial review," which provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.    Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Maldonado, however, has specified that he "is not challenging the Respondents' decision to place him into removal proceedings" but rather contests only his continued detention absent a bond hearing.  Reply at 3, ECF No. 30.  Notably, § 1252(b)(9) applies only "[w]ith respect to review of an order of removal," 8 U.S.C. § 1252(b), and a determination "regarding custody or bond" in immigration proceedings is "separate and apart from, and shall form no part of, any

5

deportation or removal hearing or proceeding."  8 C.F.R. § 1003.19(d).  Thus, § 1252(b)(9) does not bar this Court's review of Maldonado's request for release from detention or a bond hearing.

To the extent that Respondents suggest that Maldonado's challenge to his ongoing detention pursuant to § 1225(b) raises a question of law and fact "arising from" an action or proceeding to remove him from the United States, 8 U.S.C. § 1252(b)(9), such an overinclusive interpretation has been effectively rejected by the United States Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018).  In *Jennings*, when a class of detained noncitizens filed a habeas petition seeking bond hearings after they had been held in immigration detention for more than six months, a majority of the justices concluded that § 1252(b)(9) did not bar review of the claim, with the plurality opinion concluding that even though the legal questions relating to detention may not have been presented in the absence of removal actions against the class members, to find that they necessarily "arise from" the decision to remove a noncitizen would be to adopt an "expansive interpretation of § 1252(b)(9)" that "would lead to staggering results." *Jennings*, 138 S. Ct. at 840 (plurality opinion); *see also id.* at 876 (Breyer, J., dissenting) (finding that § 1252(b)(9) did not bar the claim because the challenge was to detention, not a removal order).  In particular, if § 1252(b)(9) were interpreted in "this extreme way," it would lead to the "absurd" result that a claim of prolonged detention would be "effectively unreviewable," because by the time a final order of removal could be reviewed, "the allegedly excessive detention would have already taken place" and, alternatively, if no such order was ultimately entered, the detainee would be deprived of "any meaningful chance for judicial review." *Id.* at 840 (plurality opinion). Applying similar reasoning, the United States Court of Appeals for the Second Circuit recently held that § 1252(b)(9) did not bar consideration of claims by a noncitizen that her detention

pending removal proceedings violated her due process rights under the Fifth Amendment. *See Ozturk v. Trump*, 136 F.4th 382, 387, 399–401 (2d Cir. 2025) (citing *Jennings*).

Here, as in *Jennings*, Maldonado's Petition does not seek review of an order of removal, which has not yet been issued, but challenges his detention during the pendency of immigration proceedings. Where such a challenge cannot meaningfully be contested if judicial review is precluded except after a final order removal, the Court finds that it does not "aris[e]" from an "action taken or proceeding brought to remove an alien," and that § 1252(b)(9) therefore does not bar review of the Petition. *See Jennings*, S. Ct. at 840–41 (plurality opinion); *Ozturk*, 136 F.4th at 401.

### B. Administrative Exhaustion

In their Answer, Respondents argue that the Petition is premature because Maldonado has neither had an initial appearance before, nor requested a bond hearing with, an immigration judge. Respondents thus effectively argue that the Petition should be dismissed based on a failure to exhaust administrative remedies. Although it is not entirely clear whether Maldonado has now requested a bond hearing before an immigration judge in this case, the Court finds that regardless of whether he has done so, under the present circumstances, Maldonado need not exhaust administrative remedies before the Court may consider the Petition.

The INA does not require a noncitizen to exhaust administrative remedies before asserting a constitutional challenge to immigration detention procedures. *See Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022) (holding that "no statute applicable to" such "claims provides that administrative exhaustion is jurisdictional"). Rather, a "district court ha[s] discretion to decide if administrative exhaustion [is] required." *Id.* To determine whether requiring exhaustion is appropriate, "federal courts must balance the interest of the individual in retaining prompt access

7

to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). Among the instances in which an individual's interest heavily outweighs exhaustion are when an administrative agency is shown to have "predetermined the issue before it," and when there is an "unreasonable or indefinite timeframe for administrative action." *See id.* at 146–48.

Here, the combination of these two circumstances counsel against requiring administrative exhaustion. Under Board of Immigration Appeals ("BIA") precedent, all noncitizens who are applicants for admission, as defined by 8 U.S.C. § 1225(a)(1), are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) for the pendency of their removal proceedings, regardless of the length of time they have been present in the United States, and thus are ineligible for bond hearings. *Matter of Yajure-Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025). Thus, even if Maldonado requested a bond hearing, an immigration judge would be bound to find pursuant to *Matter of Yajure-Hurtado* that Maldonado is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and thus deny Maldonado's request for release on bond. In turn, any appeal to the BIA would necessarily uphold such a ruling. Thus, the result of the administrative proceedings has been "predetermined." *See McCarthy*, 503 U.S. at 148. While the Court could require Maldonado to exhaust these procedures in order to secure judicial review of the BIA decision by a United States Court of Appeals, the timeframe required to pursue all of those steps would be "unreasonable" because with the passage of time, the allegedly improper detention would continue to occur and could not be meaningfully undone. *See id.* at 147. Based on such considerations under similar facts, several courts have concluded that they could and should consider habeas petitions such without administrative exhaustion. *See e.g.*, *Leal-Hernandez v. Noem*, No. 25-cv-02428-JRR, 2025 WL 2430025, at *10–12 (D. Md. Aug. 24, 2025); *Lopez-Campos v. Raycraft*, No. 25-cv-12486, 2025

WL 2496379, *4–5 (E.D. Mich. Aug. 29, 2025); *Chavez v Noem*, No. 25-cv-02325-CAB-SBC, 2025 WL 2730228, *3–4 (S.D. Cal. Sept. 24, 2025).   Accordingly, under the present circumstances, the Court declines to require administrative exhaustion.

### C.   Statutory Basis for Detention

In the Petition, Maldonado argues that his detention violates the Fifth Amendment because he has been improperly subjected to mandatory detention under 8 U.S.C.§ 1225(b).  To address this claim, the Court must determine which statutory authority governs his detention—the mandatory detention provisions of 8 U.S.C. § 1225(b) or the discretionary detention provision of 8 U.S.C. § 1226(a).

In their Answer, Respondents take the position that Maldonado is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), but at certain points they invoke § 1225(b)(1) as the relevant provision and at other times cite § 1225(b)(2).

Section 1225(b) is entitled "Inspection of applicants for admission."  8 U.S.C. § 1225(b). The term "applicant for admission" is deemed to include "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ."  8 U.S.C. § 1225(a)(1). Section 1225(b)(1), entitled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," states in a subsection entitled "Screening":

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

8 U.S.C. § 1225(b)(1)(A)(i).  In turn, clause (iii) applies to designated noncitizens who have "not been admitted or paroled into the United States" and who have not "affirmatively shown" that they "ha[ve] been physically present in the United States continuously for the 2-year period

immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii). Such noncitizens may be subject to expedited removal from the United States. *See* 8 C.F.R. § 235.3(b).

Section 1225(b)(2), entitled "Inspection of other aliens," states in relevant part, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2).

In contrast, Maldonado asserts that, traditionally, the detention of noncitizens who, like himself, have resided in the United States for substantial periods of time is governed by 8 U.S.C. § 1226(a), entitled "Arrest, detention, and release," which states that "[o]n a warrant issued by the [Secretary], an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see Mestanek v. Jaddou*, 93 F.4th 164, 170–71 (4th Cir. 2024) (noting that the Homeland Security Act of 2002 generally transferred the Attorney General's authority over federal immigration laws to the Secretary of Homeland Security). Section 1226(a) further provides that, subject to certain exceptions, the Secretary "may continue to detain the arrested alien" or "may release the alien" on a bond or conditional parole. *Id.* § 1226(a)(1), (2). Under applicable regulations, if ICE determines pursuant to § 1226(a) that a noncitizen will be detained, that individual may seek review of the detention decision by requesting a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d), 1003.19; 1236.1(d).

When interpreting statutes, courts must "begin with the plain language." *Hately v. Watts*, 917 F.3d 770, 784 (4th Cir. 2019) (quoting *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013)). "To determine a statute's plain meaning" courts "not only look to the language itself, but also 'the specific context in which the language is used, and the broader context of the statute

as a whole.'" *Id.* (quoting *In re Total Realty Mgmt., LLC*, 706 F.3d at 251); *see Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 601–02 (4th Cir. 2017) (in interpreting a federal statute, considering the interplay of the various subsections based on the principle that the analysis is "informed by the specific context in which that language is used, and the broader context of the statute as a whole").

Considering the statutory language, the Court finds that § 1226(a) plainly applies to Maldonado because he is an "alien" who, "[o]n a warrant" was "arrested and detained" pending a decision on whether he is to be removed from the United States. 8 U.S.C. § 1226(a). Notably, the Warrant commanded "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act" to "arrest and take [Maldonado] into custody for removal proceedings." Warrant at 1. Where section 236 of the INA is codified at 8 U.S.C. § 1226, and that authority is explicitly referenced in the Warrant, the Court finds that § 1226 squarely applies to Maldonado and thus governs his detention.

In contrast, application of § 1225(b)(1) or § 1225(b)(2) to noncitizens such as Maldonado—who have been in the United States for many years and have no criminal record— would impermissibly stretch the statutory language beyond its plain and ordinary meaning. First, § 1225(b)(1), which refers to the noncitizens subject to mandatory detention pending expedited removal, plainly does not apply to Maldonado. Although § 1225(b)(1) refers to aliens who are "inadmissible under [8 U.S.C §] 1182(a)(6)(C) or [§] 1182(a)(7)," and Maldonado is alleged in the NTA to be inadmissible under the latter provision because "at the time of application for admission" he was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document . . . and a valid unexpired passport, or other suitable travel document, or document of identity and nationality," 8 U.S.C. § 1182(a)(7), its terms apply only to such an alien who (1) "is arriving in the United States" or (2) is "described in

11

clause (iii)," which applies only to aliens who cannot show they have been physically present in the United States continuously for more than two years. 8 U.S.C. § 1225(b)(1)(A)(i), (iii). The term "arriving alien" is defined as:

[A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1001.1(q). At the time that he was detained at a gas station in Hyattsville, Maryland, Maldonado could not reasonably be deemed to have been "arriving" in the United States, and Respondents have acknowledged that Maldonado entered the United States in 2011 and thus has been present in the United States for more than two years. Notably, earlier in this case, Respondents affirmatively represented that, even though the Secretary has attempted to expand the number of noncitizens eligible for expedited removal under § 1225(b)(1), Maldonado is not so eligible even under that expanded policy, in part because he has "been present in the United States for more than 10 years." Notice at 4, ECF No. 13. The Court therefore finds that based on its plain language, § 1225(b)(1) does not apply to Maldonado.

Second, the statutory language of § 1225(b)(2) also demonstrates that it does not apply to Maldonado. Respondents focus on the term "applicant for admission," Ans. at 13, ECF No. 26, which is defined as including "[a]n alien present in the United States who has not been admitted or who arrives in the United States," 8 U.S.C. § 1225(a)(1), and argue that Maldonado meets this definition. Although the statute applies to an "applicant for admission," that is not the only operative language in § 1225(b)(2). Rather, the statute conditions mandatory detention on a determination by an immigration officer that "an alien seeking admission" is not clearly entitled to be admitted. 8 U.S.C. § 1225(b)(2)(A). The requirement that the alien at issue be "seeking admission" necessarily limits the applicability of this provision to one who, at the time of the

detention, was seeking or attempting to gain "lawful entry . . . into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (defining "admission" under the INA). To conclude otherwise would be to render this language superfluous. *See United States v. Simms*, 914 F.3d 229, 241 (4th Cir. 2019) (stating that courts cannot adopt a reading of a statute that "renders part of the statute superfluous over one that gives effect to its 'every clause and word.'" (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955))). Maldonado, like other noncitizens who have been present in the United States for years, have never attempted to acquire legal entry or status, and are not actively doing so at the time of their detention, cannot be deemed to have been "seeking admission" at the time of his detention at the gas station in Maryland. Multiple federal district courts have reached this same conclusion as to similarly situated individuals. *See, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *6–7; *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025); *Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238, at *6–7 (D. Mass. July 24, 2025).

Respondents' citation to cases that discuss "admission" or "seeking admission" in different contexts do not alter the Court's reading of the plain language of this statutory provision. *See Lopez-Sorto v. Garland*, 103 F.4th 242, 251-52 (4th Cir. 2024) (in a case addressing whether a petition for review of a BIA decision upholding an immigration judge's denial of removal under the Convention Against Torture was moot after the petitioner had already been removed from the United States, stating that even with a favorable ruling, the petitioner could not be deemed to be allowed to "reside" in the United States, as required for return to the country pursuant to an ICE Directive, because he was not legally permitted to be physically present in the United States); *Jimenez-Rodriguez v. Garland*, 996 F.3d 190, 194 n.2 (4th Cir. 2021) (in deciding whether immigration judges have the delegated authority to grant requests for waivers of inadmissibility

under 8 U.S.C. § 1182(d)(3)(A)(ii), stating *in dicta* that a noncitizen who had never been lawfully admitted qualified as "seeking admission," as required to receive such a waiver).  Thus, the Court finds that based on the statutory language of § 1225(b)(1) and § 1225(b)(2), neither provision applies to Maldonado.

The Court's conclusion that § 1226(a), rather than § 1225(b), applies to the detention of noncitizens already present in the United States is bolstered by consideration of the statute titles and section headings, which are non-binding statutory interpretation tools.  *See Dubin v. United States*, 143 S. Ct. 1557, 1567 (2023) ("This Court has long considered that '"the title of a statute and the heading of a section" are "tools available for the resolution of a doubt" about the meaning of a statute.'" (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998))).  The heading for § 1225(b) states that the provision relates to "Inspection of applicants for admission," but "inspection" refers to the "formal process of determining whether an alien may lawfully enter the United States," which occurs when "an alien . . . present[s] himself or herself in person to an immigration officer at a U.S. port of entry when the port is open for inspection" and presents required documentation, and an immigration officer determines if the individual is admissible.  7 USCIS Policy Manual, Vol. 7, Part B, Ch. 2, subpart A, https://www.uscis.gov/policy-manual/volume-7-part-b-chapter-2 (last visited Oct. 19, 2025).  Further, the heading for § 1225(b)(1) refers more specifically to "Inspection of aliens arriving in the United States" and other categories of aliens not applicable here.  Maldonado, however, cannot fairly be deemed to have been undergoing "inspection" or to have been "arriving" in the United States at the time of his detention.  8 U.S.C. § 1225(b)(1).  In contrast, the heading of § 1226(a), "Apprehension and detention of aliens," applies to aliens already within the United States, such as Maldonado, and fairly describes what happened to him when he was arrested by ICE agents.  *See* 8 U.S.C. § 1226.

14

Significantly, the Supreme Court has endorsed this understanding of the relationship between § 1225(b) and § 1226(a) by stating that § 1225(b) governs the detention of "aliens seeking admission into the country" while § 1226(a) governs the detention of aliens "already in the country pending the outcome of removal proceedings." *Jennings*, 138 S. Ct. at 838. More specifically, the Supreme Court stated that § 1226 "generally governs the process of arresting and detaining" the group of aliens consisting of those "present in the country" but who "may still be removed" because they "were inadmissible at the time of entry" or "have been convicted of certain criminal offenses since admission." *Id.* at 837. Under the Supreme Court's reading of these provisions, where Maldonado has been in the United States for over a decade but remains deportable because he was "inadmissible at the time of entry," his detention is governed by § 1226. *See id.*; *see also Hasan v. Crawford*, No. 25-cv-1408 (LMB/IDD), 2025 WL 268225, at *1, *8 (E.D. Va. Sept. 19, 2025) (citing *Jennings* in concluding that § 1226(a), not § 1225(b)(2), governed a challenge to detention by a noncitizen who entered without inspection and was residing in the United States when detained); *Lopez-Campos*, 2025 WL 2496379, at *7 (same); *Lepe*, 2025 WL 2716910, at *3, *6 (same).

Finally, the fact that, in July 2025, the BIA adopted Respondents' position in *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), does not alter the Court's conclusion. The decisions of the BIA, as agency interpretations, used to be entitled to deference pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* ("*Chevron*"), 467 U.S. 837, 865 (1984). *See Pugin v. Garland*, 19 F.4th 437, 441 (4th Cir. 2021) ("[W]e generally afford deference to an interpretation of [the INA] by a three-person panel of the [BIA]."). However, the Supreme Court recently overruled *Chevron* in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and held that federal courts are to "exercise independent judgment in determining the

meaning of statutory provisions" and need not defer to an agency interpretation of the law even while giving "[c]areful attention to the judgment" of the agency. *Loper Bright*, 144 S. Ct. at 2258, 2273. Indeed, *Loper Bright* also counsels that "the longstanding 'practice of the government'—like any other interpretive aid—can inform [a court's] determination of 'what the law is.'" *Id.* at 2258 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).    Particularly where Respondents' new interpretation of these detention provisions so as to require mandatory detention of all inadmissible noncitizens runs counter to nearly 30 years of government immigration practice, the BIA's recent about-face in *Matter of Yajure-Hurtado* carries very little weight. *See e.g.*, *Hasan*, 2025 WL 2682255, at *9 (considering the longstanding agency practice of applying § 1226(a) to inadmissible noncitizens already present in the United States as an additional factor in favor of that interpretation); *Lepe*, 2025 WL 2716910, at *8 (same).

For all these reasons, the Court finds that, consistent with the vast majority of federal courts that have recently considered this issue, the detention of inadmissible noncitizens who, like Maldonado, are already present in the United States is governed by the discretionary detention provision of § 1226(a), rather than the mandatory detention provisions of § 1225(b). *See e.g.*, *Leal-Hernandez*, 2025 WL 2430025, at *10 (finding that the detention of a noncitizen who had been present in the United States for over 20 years was governed by § 1226(a)); *Hasan*, 2025 WL268225, at *9; *Lepe*, 2025 WL 2716910, at *9; *Salazar v. Dedos*, No. 25-cv-00835-DHU-JMR, 2025 WL 2676729, at *4 (D.N.M. Sept. 17, 2025); *Lopez Santos v. Noem*, No. 25-cv-01193, 2025 WL 2642278, at *5 (W.D. La. Sept. 11, 2025); *Lopez-Campos*, 2025 WL 2496379, at *8; *Martinez*, 2025 WL 2084238, at *8.    The Court finds that the detention of Maldonado under either § 1225(b)(1) or § 1225(b)(2) is therefore contrary to law.

### D.    Due Process

While Maldonado cannot be detained pursuant to § 1225(b), his detention is necessarily governed by § 1226(a). Maldonado is therefore entitled to the procedural protections due under that statute, including the opportunity to have a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d). Because Respondents erroneously categorized Maldonado as subject to mandatory detention under § 1225(b), it is not presently possible for Maldonado to have a meaningful bond hearing.

The Supreme Court has recognized that a federal agency's failure to comply with its own regulations generally renders the associated agency action unlawful. *See United States ex rel. Accardi v. Shaughnessy* ("*Accardi*"), 347 U.S. 260, 268 (1954). In *Accardi*, the Court considered a habeas petition filed on behalf of an individual whose application for suspension of deportation had been denied by the BIA, which itself had affirmed a decision by the Commissioner of Immigration. *See id.* at 261, 263–64. The petition asserted that, in denying the application, the BIA had failed to follow its own regulation requiring it to "exercise its own judgment when considering appeals" because the Attorney General had included the petitioner on a list of "unsavory characters" that he planned to have deported, discussed the list at a press conference, and had the list circulated to the BIA and other relevant agencies before the BIA ruling, such that the matter had been effectively prejudged. *Id.* at 263–64, 266. The Supreme Court objected to the BIA's "alleged *failure to exercise* its own discretion, contrary to existing valid regulations" and remanded the case so that the petitioner could "receive a new hearing before the Board without the burden of previous proscription by the list." *Id.* at 268.

Today, the principle that "an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative

determination" has come to be known as the "*Accardi* doctrine." *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). Since *Accardi*, the Supreme Court has added a further requirement that "claimants demonstrate prejudice resulting from the violation" in order to establish a due process violation. *Id.* at 267 (citing *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970)).    Prejudice, however, "might still be presumed under certain specific circumstances," *id.*, including where "compliance with the regulation is mandated by the Constitution" and "where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986) (approving of this analysis); *Morgan*, 193 F.3d at 267 (same); *cf. Bowens v. N.C. Dep't of Hum. Res.*, 710 F.2d 1015, 1019 (4th Cir. 1983) ("An agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process.").

There can be little dispute that regulations such as 8 C.F.R. § 236.1(d), 8 C.F.R. § 1003.19, and 8 C.F.R. § 1236.1(d), which allow a noncitizen detained under § 1226(a) to request and receive review of an initial custody determination at a bond hearing before an immigration judge, are designed to provide due process to noncitizens in Maldonado's position.    Accordingly, Maldonado's continued detention absent a bond hearing pursuant to § 1226(a) constitutes a violation of his due process rights under the *Accardi* doctrine.

Respondents' argument that Maldonado's detention is presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has not been detained for more than six months does not alter the Court's conclusion. In *Zadvydas*, the Supreme Court addressed a different scenario, specifically, whether pursuant to 8 U.S.C. § 1231(a), a noncitizen subject to a final order of removal could be detained beyond the statutorily defined removal period of 90 days,

and held that the statute authorizes detention of such an individual beyond that time period only if removal is "reasonably foreseeable" but also concluded that a total of six months of detention following the issuance of the removal order is "presumptively reasonable." *Zadvydas*, 533 U.S. at 682, 699–701. Where Maldonado is not subject to a removal order, and his detention is not governed by § 1231, the presumptively reasonable six-month period of *Zadvydas* is inapplicable to Maldonado's Petition.

For all of these reasons, the Court will grant the Petition.

### E.     Remedy

As for the specific remedy, Maldonado seeks his release from ICE custody on his own recognizance or under parole, a bond, or reasonable conditions of supervision. Alternatively, he seeks an order mandating that Respondents hold a bond hearing. Respondents argue that any relief should be limited to a bond hearing.

Because the Court has found that Maldonado's due process rights are being violated by Respondents' failure to comply with a statute and their own regulations, the proper remedy is to order Respondents to provide Maldonado with the full process due under § 1226(a), which includes a bond hearing before an immigration judge. A "comfortable majority" of courts which have found similar constitutional violations have ordered such relief. *Lopez-Arevelo v. Ripa*, No. EP-25-cv-337-KC, 2025 WL 2691828, at *12 (W.D. Tex. Sept. 22, 2025); *see, e.g.*, *Salazar*, 2025 WL 2676729, at *6; *Lopez Santos*, 2025 WL 2642278, at *5; *Lopez-Campos*, 2025 WL 2496379, at *10. Ordering a bond hearing will allow the Immigration Court to weigh Maldonado's risk of non-appearance and dangerousness. *See* 8 C.F.R. § 1003.19(h)(3). While the record before the Court does not show Maldonado to be either dangerous or a flight risk, under the applicable statute and regulations, an immigration judge, not a federal district court, is designated to make such

19

determinations. *See id.*; *see also Lopez-Campos*, 2025 WL 2496379, at *10 (granting a bond hearing in part because "the Immigration Court is in the best position to evaluate Petitioner's risk of non-appearance and dangerousness").

However, a bond hearing is not the only process Maldonado is due under § 1226(a) and its accompanying regulations; rather, a noncitizen subject to § 1226(a) is entitled to three opportunities to seek release from detention. *See Miranda*, 34 F.4th at 346. The first opportunity comes when, "[a]n immigration officer is authorized to release the alien if the officer is satisfied that the alien is not a danger to the community or a flight risk," at which point the officer "may set a bond or place conditions on the alien's release." *Id.*; *see* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). If the noncitizen is not satisfied with the immigration officer's determination, that individual may appeal it to an immigration judge and have it addressed at a bond hearing as described above. *See Miranda*, 34 F.4th at 346; *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Finally, such a noncitizen may appeal the immigration judge's decision to the BIA. *See Miranda*, 34 F.4th at 346–47; *see also* 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3). The fact that noncitizens have three opportunities to be heard under 8 U.S.C. § 1226(a) is one of the reasons why the Fourth Circuit has found that this regime, if properly followed, comports with due process. *See Miranda*, 34 F.4th at 362, 366.

Because Maldonado was improperly subjected to mandatory detention pursuant to 8 U.S.C. § 1225(b), there is no evidence in the record that he received any of these steps, including the opportunity to make his case to an immigration officer for release on a bond pursuant to § 1226(a) because he is neither dangerous nor a flight risk. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). The Court will therefore grant the Petition, enjoin Respondents from further detaining Maldonado pursuant to 8 U.S.C. § 1225(b), and order Respondents immediately to provide him with access to

the procedures for seeking bond that he would have received had he been properly classified as subject to § 1226(a). Specifically, the Court will require Respondents to return Maldonado to the ICE Baltimore Field Office, where the initial bond determination would have been made, for an immigration officer to now make that determination. If the immigration officer does not release Maldonado on a bond, Respondents must arrange for the second step, a bond hearing, at which he can be represented by his counsel, pursuant to 8 U.S.C. § 1226(a), 8 C.F.R. § 236.1, 8 C.F.R. § 1236.1, and 8 C.F.R. § 1003.19, as well as provide any other process due to him under those provisions. In light of the fact that Maldonado has been improperly detained on a mandatory basis for over 30 days, and in order to facilitate an expeditious bond hearing in which Maldonado's counsel can be present, any bond hearing must be held in close proximity to the ICE Baltimore Field Office, the site of the initial determination by the immigration officer, specifically, at the Immigration Court in either Baltimore, Maryland or Hyattsville, Maryland, within seven days of the present ruling. To effectuate this requirement, to the extent that Maldonado must remain in ICE detention during that limited, seven-day period but cannot be held in the ICE Baltimore Field Office or some other facility in Maryland, the Court will order that he must be detained in Virginia or another state immediately adjacent to Maryland. If Respondents do not provide these two steps of detention review within the specified timeline, Maldonado must be released from custody from the ICE Baltimore Field Office but may be subject to conditions, including a requirement that he appear at a bond hearing in one of the two Immigration Courts referenced above.

Although Maldonado requests that the Court order that in any bond hearing Respondents shall have the burden to show by clear and convincing evidence that he is dangerous or a flight risk, the Fourth Circuit has determined that the procedures as provided in § 1226(a), including the placement of the burden on the noncitizen to show that he is neither dangerous nor a flight risk,

satisfy constitutional requirements. *See Miranda*, 34 F. 4th at 346–47. In light of this controlling authority, the Court will not grant Maldonado's request relating to the burden of proof.

Because the Court will grant relief on due process grounds, and Maldonado may be released as a result of that relief in the near future, the Court need not and thus does not presently address Maldonado's Eighth Amendment claim.

## II.   Motion to Dismiss

When a Petition for a Writ of Habeas Corpus is filed, the proper response by the Respondent is the filing of an Answer, to be followed by a Reply filed by the Petitioner. *See* Rules 2, 5, Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"); *see also* Habeas Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)."). A motion to dismiss is not contemplated under the Habeas Rules. Although the Federal Rules of Civil Procedure "may" be applied to a habeas petition, *see* Habeas Rule 12, the Court ordinarily does not apply Federal Rule of Civil Procedure 12, which governs the filing of a motion to dismiss, to a habeas petition because such a motion is effectively duplicative of an Answer to a Petition, in which all relevant arguments that could be made on such a motion can and should be made.

Here, where the arguments in the Motion to Dismiss were all simultaneously asserted in Respondents' Answer through a single brief addressing both the Answer and the Motion, the Court finds that (1) there was no need for a Motion to Dismiss; and (2) the Court's resolution of the Petition necessarily resolves the Motion to Dismiss. Because the Court has denied Respondents' jurisdictional and procedural arguments, and it has granted the Petition as to the due process claim, the Motion to Dismiss will necessarily be denied as to those issues. Because the only remaining

issue, the Eighth Amendment claim, will be addressed if necessary in relation to the Petition, the Motion to Dismiss will be denied as to that issue as duplicative.

## III.    Motion to Compel

In addition to the Petition, Maldonado has filed a Motion to Compel Respondents to Return Petitioner to this District. ECF No. 33. In the Motion to Compel, Maldonado requests that this Court use its equitable authority under the All Writs Act, 28 U.S.C. § 1651, to issue an Order compelling Respondents to return him to the District of Maryland and to release him or, in the alternative, transfer him to a detention facility in Virginia for the pendency of his habeas proceedings. Maldonado primarily argues that such a transfer is necessary to provide him with meaningful access to his attorney, and thus to the courts, for purposes of litigating the Petition.

As discussed above, however, the Court will grant the Petition and, in order to effectuate the relief warranted to resolve the Petition, the Court will require that Maldonado be returned to Maryland for the first two steps of detention review pursuant to § 1226(a) and, if necessary, to be detained only in Maryland or a state adjacent to Maryland until the bond hearing is completed. Because the ruling on the Petition will result in substantially the same relief sought through the Motion to Compel, the Court need not address the legal arguments for relief set forth in that Motion and will dismiss the Motion to Compel as moot.

## IV.    Status Reports

In its September 25, 2025 Order denying Maldonado's Motion for a TRO, the Court ordered Respondents to file a Notice with the Court "within 12 hours of each instance in which (1) Maldonado is transferred to a new detention facility; (2) Maldonado's removal proceedings are transferred to a different Immigration Court; or (3) a new hearing is scheduled or completed, or a ruling is issued, in Maldonado's removal proceedings." Order at 3, ECF No. 25. Respondents

filed such a Notice on September 26, 2025, ECF No. 28, but have filed no subsequent Notices. The Court's September 25, 2025 Order creates an ongoing obligation to file responsive Notices throughout this litigation. Based on Maldonado's Amended Notice of Intent to File a Motion for a Hearing, ECF No. 38, the Court is aware of at least one instance since September 26, 2025 in which a new hearing was scheduled in Maldonado's removal proceedings, specifically a hearing scheduled before the Eloy Immigration Court on October 20, 2025, that was not the subject of a Notice. Accordingly, Respondents are required to comply with this requirement, including by filing a Notice reporting on all responsive actions from September 26, 2025 to the present and by complying with this requirement during the remainder of this case.

## V.    Attorney's Fees

Finally, Maldonado requests attorney's fees and costs under the EAJA, which allows for a court to "award reasonable fees and expenses of attorneys" to a "prevailing party in any civil action brought by or against . . . any agency or any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(b). However, in *Obando-Segura v. Garland*, 999 F.3d 190 (4th Cir. 2021), in which a petitioner had filed a successful habeas petition seeking release from immigration detention, the Fourth Circuit held that attorney's fees relating to a habeas petition are not available under the EAJA because such a petition is not a "civil action" for purposes of the EAJA. *Id.* at 191, 197. The Court therefore must deny Maldonado's request for attorney's fees and costs under the EAJA. *See id.*; *Luna Quispe*, 2025 WL 2783799, at *3–4.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be GRANTED as specified in the accompanying Order, the Motion to Dismiss will be DENIED, and the Motion to Compel will be DISMISSED AS MOOT. The request for attorney's fees and costs will be DENIED. A separate Order shall issue.


Date:  October 21, 2025

THEODORE D. CHUANG
United States District Judge